Next case on this morning's docket is the case of Progressive Insurance v. Lawrence v. Gause. And we have Mr. Charlie Stegmaier for the appellant and Mr. Darryl Fluster for the appellee. And you may proceed, Mr. Stegmaier. Good morning. Good morning. Good morning. What we have before the court today is the interpretation of a moral cycle policy. This is not policy involving an automobile. And when you look at these policies, number one is, if you look at the intent of the parties, Mr. Gause, a motorcyclist, on the day of this occurrence, was driving his motorcycle down the highway and got behind the truck, the truck, he thought, was going to make a right turn, and instead veered towards him in order to make the turn, causing Mr. Gause, on his motorcycle, to veer to the left, hit Chad, focus on Chad, and hit a median. Those are the facts, and they're not in dispute. Now, Mr. Gause, when he procured this policy, thought that he'd have coverage for any event that might present itself to a motorcyclist. The insurance company, until the last year or so, wasn't even writing a motorcycle policy, but they suddenly have realized that the general public has got an interest in motorcycles, and as we all have experienced, there are more and more on the road. So the insurance company had to look at this motorcycle and its activities as opposed to an automobile and what occurs to the driver of the automobile. And when we do that, we have to interpret the entire policy, read it all the way through. The type of insurance we already know, but what are the risks taken by an insurance company on a motorcycle? Well, as we all know, motorcycles usually are occupied by one party, although there are times when there are two parties there. But they're open to the elements, and they have very little protection when something goes wrong. So the risks are much greater for a motorcyclist than they are, in my opinion, for a driver of an automobile. Now, what we are looking at is a policy expressly written for a motorcyclist, and the flaw that we are looking at is different than you find in automobile policies in that they have added to the usual verbiage on policies that to collect under this uninsured motor policy not only obviously there should be an unidentified driver, but that in addition, the motorcyclist must, in order to collect, must have been hit by an object or an object must be involved. And we find there are causes and objects to strike. The language that I find there, and what we find there is ambiguous. When you read it, it says that it is a hit-and-run vehicle whose owner or operator cannot be identified, no question, which strikes or causes an object to strike. Now, if you read it this way, it says which strikes an object or causes an object to strike. And what Mr. Paz simply did was he veered from the unidentified vehicle, he crossed a small gravel area, and he struck an object. That's the meaning. And the defense counsel argues well, and the insurance company argues well, it had to be an object that was in the road of some kind, and that had to strike him, and then he couldn't collect. And none of this would have happened, and he should not collect, because it really wasn't the cause of his claim. But years ago, we talked, last week we talked about but-for. But-for, Mr. Goddard's veering, struck during the strike, he wouldn't have struck the median, he wouldn't have been seriously injured, and he wouldn't have been able to collect on the policy. Mr. Stegman, so you're arguing that the policy is ambiguous. Yes. And that because the policy is ambiguous, that there cannot be summary judgment or dismissal on the pleading? That's correct. And that the trier of fact now should interpret the contract? Is that basically what you're saying? That's basically what I'm saying. And one of the arguments I just heard you make is that we should look at this differently because it's a motorcycle policy? Yes. And you can look at a number of cases cited by the defense counsel and obviously by the Supreme Court, which when I was weighing the case, the person collecting under an uninsured clause must strike, must strike the vehicle. The Supreme Court said that. Judge McGlynn, in my argument, to them, immediately went right to that clause and said, I'm sorry, Mr. Stegmeyer, but your motorcycle didn't strike the truck. You're out. But that's a standard clause under automobile policy. What this insurance company did was to view their risks and add, and add, owner cannot be identified with strikes or causes an object to strike. Well, if you're in an automobile, what hazard is there if a rock comes up and hits your windshield? Okay, it happens, but that's not a risk to you personally as an operator. But as a motorcyclist, if something comes up from the highway and hits you, you've got serious problems. So there are different risks, different risks. This is new grounds for insurance companies. I'm not sure I follow your different risk argument. I mean, because essentially you're saying that this is a miss and run, as they say, rather than a hit and run. And isn't that the same, I mean, isn't potentially the same scenario present with a car? If, I mean, he swerved, according to his statement, he swerved to avoid the vehicle and then hit a median. Yes. Wouldn't a car, couldn't a car be in exactly the same position? Well, I think a car could be in that position. But under a car policy, you would not, in my opinion, see this language. This language is unique to a motorcycle policy and not to a car policy. And there's case law, though, that does say if something comes off a vehicle and hits you, you don't have to actually have the strike. You can actually have the motion of the parts coming at you from a car, and there is liability under the underinsured or uninsured. It would depend, Your Honor, on the language of the insurance company's policy. But aren't there car policies that are written similar to this to cover exactly what Justice Cates was talking about, if you have a transport truck that's carrying something and flies off and goes through your windshield? Well, if that is the case, I've yet to see a specific case that would hold that principle. The case I'm referring to had the standard language, did not have the extra language. What I'm saying to you is, again, this language can be construed in so many different ways. And I'm asking this Court to find that clause to be ambiguous and reverse the motion for summary judgment. I might add that, unfortunately, when Judge McQuinn wrote the order, he did not specify in particular why he was rendering this. And I can only glean from that what I heard from him from the bench. And he didn't pay any attention to the insured having to report within 24 hours, because this insured was in intensive care for quite a number of days, and the insurance company actually went to him in the hospital and took the statement. I have a question about that. What is a civil authority? I mean, is a civil authority the insurance company? I'd like to know. I don't know the answer. I really do not know what a civil authority is. I thought it might have been a police, fireman, ambulance driver. I don't know. But you're saying that the insurance company did visit the insured in the hospital, so it's not like they didn't know about it. Oh, no. My driver contacted the insurance company as soon as he could. When was that? Pardon? Was that like a week after it or when he got out of the hospital? No. As a matter of fact, in his statement, he indicated that when he was in the hospital, he made the call to the insurance and reported it to them. And they then sent someone to the hospital to interview him. Well, he took a statement then, Your Honor, from him. He spoke close to the 24 hours. Within a reasonable time, I could use that phrase, after the 24 hours. It was not within the 24 hours. Mr. Stegmaier, Mr. Flester makes the argument that the case law that does extend coverage to objects coming off a truck, let's say, and striking a vehicle is different, is distinguished from this case and cases like this case where there was no contact or nothing that came from the torque feeser, let's say. Right. And your vehicle struck something. He struck an object. An object. So is there any case law to support this scenario to apply coverage? No. As a matter of fact, Judge, this might be a unique question as far as the facts are concerned and the interpretation of this policy. There's a number of cases, especially in Chicago, where there's much more traffic and much more exposure to things like that happening. But the scenario we're talking about, I couldn't find anything that was similar to that set of circumstances. And one of the oddities of this is when you try to interpret the word object, something like a word like that you think would be no problem whatsoever. But it's so broad and so many different ways you could identify it. If you just look at that clause again, which strikes an object or causes an object to strike, it will, in fact, support my position. Is the object then the motorcycle? Or is it the median? It's the median. Or is it the chair? Again, we're trying to struggle with these different kinds of concepts. So I ask the court to certainly help. Did the police respond to this accident? Yes, they did. The police, and I assume your client was taken away by ambulance? That's absolutely correct. And that was on the day? That was the evening of the incident. So there's a police report for this accident? And in the police report, it might have been an eyewitness to this happening. But it was right behind the motorcycle. And that support, that eyewitness supported your client's version? Absolutely. One hundred percent, yes. Not as detailed as the first argument, but maybe as succinct as I can put it. Thank you. Thank you, Mr. Stegmaier. You'll have the opportunity for rebuttal. Thank you. Mr. Flassner? Please let the court consult. I think what we've got here is pretty easy to understand. Factually, there's no disputes. The only evidence in the record, essentially, is the deposition testimony of the defendant, the driver of the motorcycle, Mr. Goss. That's taken as true for purposes of summary judgment. Speak up just a little bit. Oh, sure. This fan is making it difficult for us to hear. That's taken as true for purposes of summary judgment. So we don't have any disputes that Mr. Goss swore to avoid a dark-colored truck, that he hit some loose gravel on the side of the road, lost control of his vehicle, and ended up colliding with the median, the center median by a curb height median. Just real quick to clear up a couple of factual things that were brought up in the prior argument. There was no police report. The police did not respond. The ambulance did not respond. This gentleman was being followed with a riding motorcycle with a couple of other buddies. One of them had a truck and put him in the truck and took him to the hospital. So there was no police report, and there was no response by the police or any other civil authority. How did we get an eyewitness? Was the eyewitness the buddy in the back? Yes, that's exactly right. And they submitted statements that they wrote and wrote to counsel for the driver that he later submitted in March of 2012, right around the time this declaratory judgment action was filed, submitted its progress. Was the injured person in an intensive care unit? I don't know the answer to that. We didn't have any medical records. We didn't collect any medical records in this case. Was it early morning or what? Yes, it was. They were on their way to, I think, a late-night bar at the time, and they had been driving around, been in another tavern earlier that evening, were on their way to another one when this accident occurred, and so I can't speak to whether or not he was in intensive care. The statement doesn't say? No. But he was hospitalized? He was hospitalized, yes. And did your company send an agent to? I don't know if that's true or not either, because Mr. Goss didn't speak to that in his deposition. That's the first I've heard of this. He did give a statement that that was later on. He was not in the hospital at the time of the statement. You don't know if your agent went to the hospital? No, that's the first time it's been brought up. I am not aware of that being the case. Can you tell me about this argument Mr. Stegmayer has made about the difference in policies? Is this language for Progressive Universal Insurance Company, is it anywhere else besides Illinois? Has it been interpreted? The clauses and object described? The clauses and object described. I have not looked at policies outside of Illinois, but what I can tell you is that this is not policy language that's specific to motorcycle policies. This is policy in layman's terms. In fact, there was a case that was brought up on appeal. We ended up settling it beforehand to this court in which a semi-truck driver had something come through his windshield. And this very policy language was involved in that policy. It was a similar type of issue, and that is whether or not it was propelled or not. I don't understand the argument that there is some distinguishment between motorcycle policies and automobile policies. The same language is used for progressive in both, and certainly there is one uninsured motorist statute in the state of Illinois and it does not distinguish between motorcycles and automobiles. It simply states that it's an uninsured motorist. But in the cases that you cited, and I looked at them, not one of them had this language in them. Yeah, I think this language is unique.  I can't speak to other companies' policies, but I can say that I believe this language was added later. There's an Illinois case law that has come out about the last 10 years or so that has added to this physical contact requirement. There's no dispute between the parties that there's got to be physical contact for uninsured motorist coverage to apply. This language simply puts in the policy what the state of Illinois already recognizes regardless of whether or not it's there to begin with, and that is if an uninsured motorist, a hit-and-run vehicle, strikes an object in the road, propels it into another, the insured driver or the insured vehicle, then that constitutes physical contact for the purposes of uninsured motorist coverage. The same case is true if a hit-and-run vehicle strikes another vehicle, propelling it into the insured or the insured driver. The Illinois case law that we cited, Illinois National Insurance Company v. Palmer, is one of the cases that has spoken to this issue. In that case, the policy language of causes an object to strike was not in the policy. The court read through the policy anyway and said that it's a reasonable interpretation of the hit-and-run motorist statute or the uninsured motorist statute that this constitutes a hit-and-run vehicle. The fact that they propel or cause an object to fly into or strike the insured or the insured driver, that constitutes the hitting part of the hit-and-run. In this case, that's not the issue. The language is pretty clear. None of the words are being pointed out as being unclear. Simply, the alleged ambiguity is that this situation or the policy language would cover an instance where the insured driver strikes an object rather than an object striking the insured driver. The order of those words is important. It's as important as the earlier part of that provision, which says that a hit-and-run motorist includes when the hit-and-run driver vehicle strikes the insured driver or the insured driver's vehicle. If he had somehow caused a piece, the uninsured driver, had caused a piece of the median to break off and fly over and knock him in the head, that would be covered. Absolutely. That is an instance where an object, in this case the piece of the median, is caused to strike. This is just a reasonable interpretation of these words. In fact, as Defendant Appellant has argued today and in his memorandum in opposition to summary judgment in front of the circuit court, that's how he explains the situation. He said in the memorandum that Mr. Goss avoided a collision with a dark-colored truck or hit-and-run vehicle, causing him to strike the center median. And today he said that the swerving to avoid the dark-colored truck, the hit-and-run vehicle, caused Mr. Goss to hit the median. There's no ambiguity in when this argument is made, this explanation is made in front of the court by Defendant Appellant. There should be no ambiguity found when that language is in the policy. It's pretty straightforward. It does not say or cause the insured driver to strike an object. That is not what the policy says. At this level of the pleadings, it was dismissed on summary judgment, right? Yes, Your Honor. And there seemed to be some indication in the briefing, although I think this is true, that before he hit the median, there were rocks that were causing this motorcycle to go into the median. So without any fact-finding here, how can you say that this truck did not cause the rocks to go into the motorcycle, thereby striking the median? I mean, that's one of the allegations. That is actually not one of the allegations by the Defendant Appellant. There's been no allegation that rocks were causing it. Not the defendant. The defendant. Oh. Mr. Goss, yeah. The insured driver. This was something I took out of the briefs. That's why I was asking. In his deposition, in the deposition that was taken in the underlying case, the case before the circuit court, Mr. Goss testified in his deposition that when he swerved to avoid contact with the hit-and-run vehicle, the dark-colored truck, that he was caused to run off the road. There was some loose gravel on the side of the road that he drove over, and he was uncertain at that time whether or not he lost control of the vehicle, of the motorcycle, because he was driving over loose gravel or because he struck the median. He doesn't know which actually caused him to strike, to lose control of the motorcycle. He believed it was because he hit the median, but he said it was a possibility that it was because he drove over loose gravel on the side of the road. There was absolutely no testimony that this hit-and-run vehicle struck loose gravel or rocks and propelled him into Mr. Goss causing him to lose control. That was not in the deposition, and it is not part of the argument in this appeal. The case law in Illinois interpreting these uninsured motorist claims are pretty clear. There's got to be physical contact. There's no dispute today that that's the case. And the case law interpreting instances where an object is propelled into a vehicle also are very clear. The instance has to be that a hit-and-run vehicle actually causes an object to hit the insured or the insured vehicle, not the other way around, not cause the insured to hit the object that's alleged to have caused the accident. We did cite a case at Swan versus Country Mutual in which the Illinois Supreme Court looked at identical factual situations in which a vehicle was swerved out of the way to avoid an accident and ran into the vehicle. The Illinois Supreme Court said that is not covered under the Illinois statute. It's not covered under the policy language. Granted, the policy in that case did not include this or cause an object to strike. However, as we have already discussed, the Illinois case law has said that that's read into the uninsured motor statute to begin with, regardless of whether or not it's part of the policy anyway. But the policy language didn't have this extra provision in that case. It did not have it or cause an object to strike. Have you found any case in Illinois that has this provision or they've denied coverage? No, Your Honor. I have not found a case. I don't believe there's been a progressive case that's included this policy language that's been taken up on appeal in Illinois. Which makes you think progressive is the only one that's added this? I don't know if that's the case or not. Okay. Did anybody talk to the police or the civil authority at all? No. And as Mr. Stegmaier brought up, Judge McGlynn didn't distinguish between the two arguments. I'm sorry. Judge McGlynn and the circuit court did not distinguish between the two arguments that we brought for summary judgment. One was what we've been discussing so far, and the second is that there was no report to police or civil authority in 24 hours. There was, in the deposition testimony, Mr. Goss testified that he did not call the police, that he didn't ask any of his friends who drove him to the hospital to call the police, that he didn't report it to any other civil authority, including ambulance, fire personnel, et cetera, and that at no point was this incident ever reported to the police. And therefore, no investigation was ever made as to find this vehicle. To determine the truck. Exactly. To determine if this vehicle. Or a new dark truck. Exactly. On that roadway at the time. Is an ambulance a civil authority? I would submit that the civil authority would include the police, the fire personnel, and the medical personnel that are paid for by the state. So a hospital. Where do you draw the line between a hospital and a medical provider? It would have to be a civil authority. A hospital would be a private entity in almost all cases. Aren't they required under certain provisions of Illinois law to report to the police? I don't know. You don't know about the reporting acts? No.  What I'm saying is that's the first instance that I've heard of it today. So it could have. I don't know. The agent could have. I've not been. There is no instance in the notes that we have from the agent. No conversation that I've had with the agent, and certainly no statement by the insurer that this occurred. This was new information that was provided today. Other than the fact that there's no evidence that that ever occurred in the record, I can't speak to whether or not that is the case. I certainly was not in the hospital with Mr. Johnson. And that's all I have. Any other questions? I don't think so. Thank you, Mr. Klostner. Mr. Stigmeyer, do you have a bottle? First of all, of course, I owe an apology to the court if I misstated that the police and the ambulance were there. I know that Mr. Goss could not, on his own account, get to the hospital. And apparently the eyewitness took him to the hospital, and that's how he arrived. The insurance company, in this particular case, saw fit to immediately file for a declaratory judgment. Before we could even expand any of our discovery as to some of these issues that are now argued before the court, Judge Cates made an interesting point about the rocks. The question was never asked in the deposition by the insurance company, but the rocks, in fact, hit him, causing him to lose control, and he strikes the beat. But there again, putting all that aside, we're back to a clause that was in this policy, as far as I know, is in no other policy that has ever been cited in Illinois. So it's one of first impression in Europe. And again, I go back to the issue of the facts and what Mr. Goss' intention was when he took out the facts, and that is to protect him against any risk that was inherent to a motorcyclist, as opposed to, in my opinion, someone with a car. And had we developed the facts further in discovery, we would conclude that, in fact, the agent was at the hospital, in fact, did take a statement, and did that at the request of Mr. Goss. But defense counsel was not part of that part of the case, but that's exactly what occurred. So I'm, again, asking this court to look at this new language, if you will, and see if, in fact, it's open to more than one interpretation by reasonable people. I'm not asking the court to say, well, let's do it in favor of Mr. Stegmaier. What I'm saying is let's do it in favor of motorcyclists who are all over the highways nowadays, and they need protection. Your Honor's talked about the hit-and-miss arguments that the Supreme Court has wrestled with on a number of occasions, and they're narrowing, in my opinion, the insurance's ability to just blanket their coverage and see the construction of language, if you will, to get out a hit-and-miss claim. And I think what we have and all that we can do, Mr. Goss fighting the insurance industry, we have to appeal to the appellate court to give us an interpretation and tell us and tell everyone else about this clause. And I would believe that the court's going to hear more about this clause in the future if it's in other policies. So I again thank the court for the time it's taken for me to present this and ask the court to construe this as very ambiguous, intent of the parties, and the contract in the whole should send this case back to the trial court for further discovery and maybe amendments. Thank you. Thank you, Mr. Stegmaier. Thank you, Mr. Klessler, both for your briefs and arguments. We will take the matter under advisement.